**In re NATIONAL STUDENT MAR-
KETING LITIGATION.**

**No. 105.**

Judicial Panel on Multidistrict Litigation.

Dec. 1, 1972.

Full Opinion Jan. 29, 1973.

Before ALFRED P. MURRAH, Chairman, and JOHN MINOR WISDOM, EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH S. LORD, III, and STANLEY A. WEIGEL, Judges of the Panel.

OPINION AND ORDER

ALFRED P. MURRAH, Chairman.

The Panel having found, upon the basis of the papers submitted and the hearing held, that the actions listed on the attached Schedules A and B involve common questions of fact and that transfer of these actions to a single district for coordinated or consolidated pretrial proceedings would serve the convenience of the parties and witnesses and would further the just and efficient conduct of the litigation,

It is ordered that all actions on the attached Schedule A pending in districts other than the District of Columbia be, and the same hereby are, transferred to the District of Columbia and, with the consent of that court, assigned to the Honorable Barrington D. Parker for coordinated or consolidated pretrial proceedings with the action pending there pursuant to 28 U.S.C. § 1407.

It is further ordered that, in view of the pendency of the appeal of defendant White & Case from an order of the Southern District of New York, the claims against White & Case asserted in the actions listed on Schedule B will not be transferred at this time and only the claims asserted in those actions against defendants other than White & Case are transferred to the District of Columbia and, with the consent of that court, assigned to the Honorable Barrington D. Parker for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407, with the actions pending in that district.

A full opinion and order will be filed hereafter.

### SCHEDULE A

#### Southern District of Ohio

Michael Monroe, et al. v. Peat, Marwick, Mitchell & Co. — Civil Action No. 71–309

#### Northern District of Texas

B. Vernon Roberts v. Peat, Marwick, Mitchell & Co. — Civil Action No. CA–3–5782

#### District of Columbia

Securities & Exchange Commission v. National Student Marketing Corp., et al. — Civil Action No. 225–72

### SCHEDULE B

#### Southern District of New York

Mildred Lipsig, et al. v. National Student Marketing Corp., et al. — Civil Action No. 70 Civ. 2006

Louis Garber v. Cortes W. Randell, et al. — Civil Action No. 70 Civ. 835

Domenick L. Natale v. National Student Marketing Corp., et al. — Civil Action No. 72 Civ. 721

Morton Augenstein, et al. v. National Student Marketing Corp. — Civil Action No. 72 Civ. 1606

Joseph Kwiatkowski v. Peat, Marwick, Mitchell & Co., et al. — Civil Action No. 72 Civ. 2107

Before ALFRED P. MURRAH, Chairman, and JOHN MINOR WISDOM,* EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH S. LORD, III,* and STANLEY A. WEIGEL, Judges of the Panel.

## OPINION AND ORDER

PER CURIAM.

Peat, Marwick, Mitchell & Co. ("Peat, Marwick" hereinafter) moves to have six private damage actions under the federal securities laws involving National Student Marketing Corp. transferred to the Southern District of New York for coordinated or consolidated pretrial proceedings. An action brought by the Securities and Exchange Commission against National Student Marketing ("National" hereinafter) and others for injunctive relief and an additional action against National pending in the South-

ern District of New York[1] are also before the Panel. Upon the basis of the briefs and arguments we have concluded that all eight actions must be coordinated in a single district for pretrial proceedings, but that the District of Columbia is the most appropriate transferee district for the litigation.

### I. Pending Litigation

During the period in issue National was apparently engaged in a wide range of promotional and marketing services aimed at young people and acquired several corporations engaged in similar endeavors. A series of annual reports, audited and unaudited financial statements, press releases and other communications were issued by National during this period and utilized in connection with its acquisitions. Plaintiffs now allege, among other things, that these statements and related communications were false and misleading and otherwise in violation of the federal securities laws. Defendants in these actions include National and its officers and directors; National's accountant, Peat, Marwick; several attorneys and their law firms; and several brokerage houses and public relations firms.

### A. District of Columbia

The most comprehensive complaint has been filed by the Securities and Exchange Commission in the District of Columbia. The SEC alleges that National and its officers and directors and Peat, Marwick and its employees participated in a scheme to defraud National's stockholders and others. Part of the alleged scheme involves the series of acquisitions referred to earlier. For purposes of the present motion, the most important of these acquisitions involved Impressions by M, Inc., acquired in April 1969; Varsity House, Inc., which exchanged its assets for National stock in October 1969; and Interstate National Corp., acquired two days after Varsity

---

* Although Judges Wisdom and Lord were not present at the hearing, they have, with the consent of all parties, participated in this decision.

1. Joseph Kwiatkowski v. Peat, Marwick, Mitchell & Co., et al., S.D.N.Y., No. 72 Civ. 2107.

House. In the negotiation for all these acquisitions National's Consolidated Financial Statement for the fiscal year ended August 31, 1968, was given to the acquired corporations and their stockholders. And in both the Varsity House and Interstate dealings an unaudited report for the third quarter of 1969 was also provided by National.

The second claim asserted by the SEC relates exclusively to the Interstate acquisition and adds as defendants the attorneys who advised Interstate and National in connection with that merger. The proxy materials mailed to the National and Interstate stockholders contained National's unaudited financial statement for the third quarter of 1969. As a condition to the merger, Peat, Marwick was asked to issue a "comfort letter" stating that it had no reason to believe that the unaudited financial statement was not prepared in accordance with generally accepted accounting principles or required any material adjustments. The letter was also to state that National had suffered no material adverse change in its financial position after the date of the unaudited statement. The SEC alleges that after examining National's unaudited financial statement Peat, Marwick informed National's counsel that material adjustments in the statement were required and, after the closing, suggested that resolicitation of the stockholders should be considered. It is further alleged that National and its officers and attorneys and the officers of Interstate and their attorneys concealed Peat, Marwick's conclusions from public investors and other stockholders and that false opinions were

given by the attorneys concerning the merger.[2]

The SEC requested a permanent injunction against future securities law violations by all defendants and a mandatory injunction requiring the correction of past filings with the Commission. On the consent of the company, which neither admitted nor denied the allegations of the complaint, such a judgment was entered against National subsequent to the Panel hearing in this matter. The action is still pending against the remaining defendants.

B. *Southern District of New York*

Five actions have been filed in the Southern District of New York by National stockholders, seeking damages for alleged violations of the federal securities laws. Three of the five actions have been consolidated for trial and a consolidated, amended complaint has been filed, naming as defendants many of those named in the SEC action along with several brokerage houses and public relations firms.[3] Recovery is sought on behalf of a class composed of all persons who acquired the securities of National between April 1, 1965 and February 17, 1972, and were damaged by the acts of the defendants.

The allegations of the consolidated complaint are quite similar to those of the SEC. Plaintiffs assert that National's financial reports, statements, press releases and other communications were materially false and misleading, causing the price of National's stock to be artificially inflated. And one of the consolidated New York plaintiffs who acquired his National securities in the Interstate

---

2. The SEC complaint contains two other claims, one relating to the sale of National shares by Interstate officers before the public was informed of Peat, Marwick's recommendations and the other alleging that the profits of two National subsidiaries were misreported in the Consolidated Financial Statement for fiscal year 1969.

3. The parties failed to inform the Panel that, at the time of the hearing on this

matter, defendant White & Case had appealed from the order in the Southern District of New York consolidating the three actions. Because of this appeal claims of the plaintiffs for relief against White & Case will not be scheduled for coordinated or consolidated pretrial proceedings at this time. These claims for relief will be immediately separated and remanded under 28 U.S.C. § 1407(a) 'to await action on these appeals.

acquisition makes many allegations concerning this transaction which are said to be based on the allegations of the SEC complaint. In addition, the brokerage firms are said to have promoted National's stock when they knew or should have known its price was artificially inflated while the public relations firms are said to have written and circulated unrealistically favorable reports on National during this period.

Also pending in the Southern District of New York are the *Augenstein* and *Kwiatkowski* actions. Augenstein and several other individuals, stockholders of Impressions by M, who became National stockholders, allege that their exchange of Impressions by M stock for National stock was made in reliance on the 1968 Consolidated Financial Statement of National and other statements of the defendants which were false, misleading and in violation of the federal law. It is also alleged that the sale of shares to plaintiffs constituted an unregistered, non-exempt public offering and that National breached its merger agreement warranties concerning the accuracy of its financial statements and violated its agreement to deliver additional National shares to plaintiffs, contingent upon the earnings of Impressions. The *Kwiatkowski* action is brought by another former stockholder of Impressions by M and is based on the Impressions acquisition, the Consolidated Financial Statement of 1968 and the alleged deception in the Interstate acquisition.

### C. *Southern District of Ohio*

The *Monroe* action in the Southern District of Ohio is brought by the former officers and directors of Varsity House against Peat, Marwick. They allege that the Consolidated Financial Statement for 1968 and the unaudited financial statements of National for the third quarter of 1969 were false and misleading and that Peat, Marwick aided and abetted others in misrepresenting National's financial condition at the time of the Varsity House acquisition, in violation of the federal securities laws. And it appears that plaintiffs have served interrogatories on Peat, Marwick requesting information concerning financial statements and other information for the years 1968 to 1970, including information relating to the Interstate acquisition.

### D. *Northern District of Texas*

The remaining action, filed in the Northern District of Texas by an investor in National's securities, alleges that Peat, Marwick, the sole defendant, issued financial reports for National which contained material misrepresentations and omissions. No class allegations are contained in the complaint.

### II. *Private Actions*

■ The seven stockholder cases are clearly appropriate for coordinated pretrial proceedings. Common questions of fact are raised concerning National's acquisitions and, more particularly, concerning National's financial statements, press releases and other oral and written communications. Discovery in each case will cover much of the same ground and the convenience of the parties and witnesses and the just and efficient conduct of the litigation require that all pretrial activity be supervised by a single judge.

The only opposition to the transfer of these cases for pretrial proceedings comes from the plaintiffs in the *Monroe* and *Augenstein* actions. The Monroe plaintiffs assert that their action involves only the Varsity House acquisition and would become needlessly protracted if included for coordinated pretrial with actions involving other acquisitions of National and other allegedly illegal conduct. As we have noted, however, the question of the correctness of National's Consolidated Financial Statement of 1968 is involved in all of these cases and similar questions concerning the unaudited financial statement for the third quarter of 1969 are also raised in many of the cases. In order to prove their allegations the Monroe plaintiffs will necessarily explore the same factual background as the consolidated New

York plaintiffs, Augenstein and the other plaintiffs.

A similar argument is presented by the Augenstein plaintiffs. They concede that certain of their claims raise questions of fact common to the other actions, but they assert that their contentions that National violated the terms of the Impressions by M merger agreement and that their receipt of National shares was an unregistered, non-exempt public offering are not common to any other action. They argue that because of these non-common claims their action should be excluded from coordinated pretrial proceedings or only the common claims transferred. We do not agree. The common questions raised by the *Augenstein* complaint are substantial and the non-common questions of fact involve the same parties as and are closely related to the common issues. For this reason we think it best to include the entire action in the coordinated pretrial proceedings. The transferee judge, with the assistance of the parties, will then be free to develop a pretrial schedule which will assure the prompt development of common factual areas and make such arrangements for the individual needs of the Augenstein plaintiffs as seems appropriate.

### III. *The SEC Action*

■ The SEC is opposed to the inclusion of its actions in coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. It contends that the purpose of its action is to secure prompt injunctive relief in order to protect the public from continuing violations of the securities laws and that this purpose will be frustrated by making the action part of the coordinated pretrial proceedings. In this case, as noted above, this injunctive relief has been granted by consent judgment. Further, the SEC suggests that the same considerations which led to the enactment of 28 U.S.C. § 1407(g),[4] exempting from transfer government actions for injunctive relief under the antitrust laws, require the Panel to exempt its action for coordinated or consolidated pretrial proceedings. We think the SEC action is an integral part of this litigation and that it should be included in the coordinated pretrial proceedings.

■ We do not believe, and we do not understand the SEC to contend, that the statute can be construed to exempt from coordinated pretrial proceedings all injunctive actions instituted by a government agency to enforce a remedial statute in the public interest. The basic purpose underlying the enactment of 28 U.S.C. § 1407 was to secure, in multidistrict civil litigation as in all other civil litigation, the "just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1. The draftsmen were aware that the impact of coordinated pretrial proceedings under the statute would extend beyond the antitrust area into any area where actions pending in different districts raised common issues of fact,[5] but no attempt was made, other than that contained in Section 1407(g), to limit the civil actions subject to such proceedings. It would be violative of the basic statutory purposes for us now to read such an exception into the statute.

The SEC does contend, however, that including its action in the coordinated

---

4. 28 U.S.C. § 1407(g) provides:
   Nothing in this section shall apply to any action in which the United States is a complainant arising under the antitrust laws. 'Antitrust laws' as used herein include those acts referred to in the Act of October 15, 1914, as amended (38 Stat. 730; 15 U.S.C. 12), and also include the Act of June 19, 1936 (49 Stat. 1526; 15 U.S.C. 13, 13a, and 13b) and the Act of September 26, 1914, as added March 21, 1938 (52 Stat. 116, 117; 15 U.S.C. 56); but shall not include section 4A of the Act of October 15, 1914, as added July 7, 1955 (69 Stat. 282; 15 U.S.C. 15a).

5. Hearings on S. 3815 before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 89th Cong., 2d Sess. 5, 6, 17, 53 (1966); H.R.Rep. No. 1130, 90th Cong., 2d Sess. 3 (1968).

pretrial proceedings will not further the just and efficient conduct of the litigation. More specifically, the SEC notes that the disposition of the class action question in the private cases will require the prompt attention of the court and will inevitably delay proceedings in its action. The SEC asserts that its complaint is based upon an investigation pursuant to its statutory powers and that much of its discovery has been completed in this manner while relatively little discovery has been accomplished in the private actions. In a paper filed subsequent to the hearing in this matter, the SEC indicated its belief that no more than ninety days should be required to prepare its case for trial against the remaining defendants. Certain of those defendants have taken issue with this proposal, suggesting that a substantially longer period would be needed for them to prepare for trial.

■ As the SEC concedes, in determining whether transfer is appropriate, we must "weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in light of the purposes of the law." In re Childrens' Books Litigation, 297 F.Supp. 385, 386 (Jud.Pan.Mult.Lit. 1968). Upon this basis we believe that the just and efficient conduct of all actions would be furthered by including the SEC action in pretrial proceedings. The SEC has conceded the existence of common questions of fact in these actions and has indicated its intention to seek further discovery from the defendants. It also appears that the defendants will wish to engage in a substantial amount of discovery before they are ready for trial. The benefits of coordinated pretrial proceedings are obvious on these facts. It is also probable that questions will be raised by the private plaintiffs concerning access to the SEC transcripts of testimony and related exhibits collected in its investigations of this matter which the SEC intends to make available to the defendants in its action. These questions can best be re-solved by assigning both the private and the SEC cases to a single judge.

We do not find the SEC's assertion of possible delay a sufficient counterbalance to the advantage of consolidation for we think it ignores the flexibility inherent in coordinated or consolidated pretrial proceedings. The transferee judge in this litigation will be free to tailor a pretrial schedule to fit the needs of the individual actions, and with the assistance of the parties, and day-to-day contact with the litigation, he will be able to gauge the extent of coordination appropriate between the SEC and the private cases. There is no reason why the decision of the class action question or the discovery necessary in the private actions should unnecessarily delay the SEC in preparing for trial against the remaining defendants.

IV. *Transferee District*

■ The only remaining question concerns the appropriate transferee district for this litigation. Peat, Marwick, the movant, requests transfer of all actions to the Southern District of New York, asserting that more defendants are located there than in any other district, that many of National's documents are located there and that the Interstate acquisition occurred in that district. New York plaintiffs and various other defendants also urge selection of New York.

We find the arguments in favor of the District of Columbia more persuasive. In the years in issue the business of National was conducted largely through its Washington, D. C. offices, and it was the Washington, D. C. office of Peat, Marwick that provided the necessary accounting services to National. Many of the accounting personnel of National and Peat, Marwick are said to reside in the Washington, D. C. area while the defendants located in New York are primarily the broker dealers, who are alleged by consolidated New York plaintiffs to have promoted National's stock in an illegal manner. As

the SEC contends, this broker claim is a secondary one and, in any event, these defendants will not be greatly inconvenienced by assigning the cases to the District of Columbia rather than New York.

A comparison of the respective dockets in the two proposed transferee districts also indicates the desirability of transfer to the District of Columbia. The 1972 Annual Report of the Administrative Office of the United States Courts shows that the number of pending civil cases decreased more than eighteen percent in the District of Columbia during fiscal 1971, while the Southern District of New York experienced an increase of one percent in its pending civil actions. Annual Report of the Director of the Administrative Office of the United States Courts (1972), Table 20. Even more significantly, the median time interval from issue to trial in civil cases was eighteen months in the District of Columbia but twenty-seven months in the Southern District of New York. *Id.*, Table 45b.

It is therefore ordered that all actions on the attached Schedule A pending in districts other than the District of Columbia be, and the same hereby are, transferred to the District of Columbia and, with the consent of that court, assigned to the Honorable Barrington D. Parker for coordinated or consolidated pretrial proceedings with the action pending there pursuant to 28 U.S.C. § 1407.

It is further ordered that, in view of the pendency of the appeal of defendant White & Case from an order of the Southern District of New York, the claims against White & Case asserted in the actions listed on Schedule B be separated and remanded so that those claims will not be transferred at this time, and only the claims asserted in those actions against defendants other than White & Case are presently transferred to the District of Columbia and, with the consent of that court, assigned to the Honorable Barrington D. Parker for coordinated or consolidated pretrial

proceedings, pursuant to 28 U.S.C. § 1407, with the actions heretofore transferred and pending in that district.

### SCHEDULE A

#### Southern District of New York

| | |
|---|---|
| Morton Augenstein, et al. v. National Student Marketing Corp. | Civil Action No. 72 Civ. 1606 |
| Joseph Kwiatkowski v. Peat, Marwick, Mitchell & Co., et al. | Civil Action No. 72 Civ. 2107 |

#### Southern District of Ohio

| | |
|---|---|
| Michael Monroe, et al. v. Peat, Marwick, Mitchell & Co. | Civil Action No. 71–309 |

#### District of Columbia

| | |
|---|---|
| Securities and Exchange Commission v. National Student Marketing Corp., et al. | Civil Action No. 225–72 |

#### Northern District of Texas

| | |
|---|---|
| B. Vernon Roberts v. Peat, Marwick, Mitchell & Co. | Civil Action No. CA–3–5782 |

### SCHEDULE B

#### Southern District of New York

| | |
|---|---|
| Mildred Lipsig, et al. v. National Student Marketing Corp., et al. | Civil Action No. 70 Civ. 2006 |
| Louis Garber v. Cortes W. Randell, et al. | Civil Action No. 70 Civ. 835 |
| Domenick L. Natale v. National Student Marketing Corp., et al. | Civil Action No. 72 Civ. 721 |

STANLEY A. WEIGEL, Judge of the Panel (concurring).

The salutary benefits of coordinated or consolidated pretrial proceedings, provided for by 28 U.S.C. § 1407, should not be denied to litigants in cases brought by the SEC. Nothing in the statute itself supports a different view. Its first sentence speaks of "civil actions involving one or more common questions of fact . . . pending in different districts". The language is not limited to some of those actions nor does it elsewhere or otherwise except actions initiated by the SEC. The sole legislative exemption is accorded to actions brought by the United States in antitrust cases. 28 U.S.C. § 1407(g).

Whether a particular SEC action warrants transfer must be judged by the criteria designated in § 1407, i. e., will transfer serve "the convenience of parties and witnesses" and "the just and efficient conduct of [civil] actions"?

Thus, for example, if an SEC action is close to trial, that is a fact which properly may cause the Panel to deny it transfer with other cases which are far from trial. *See, e. g.,* In re Glenn W. Turner Enterprises Litigation, 355 F. Supp. 1402 (Jud.Pan.Mult.Lit.); In re King Resources Company Securities Litigation, 342 F.Supp. 1179, 1183, n. 13 (Jud.Pan.Mult.Lit., 1972). Such a denial would be proper only if in the interest of promoting just and efficient conduct of the action, *not because it is an SEC action.* If we deny transfer on the latter ground, we invoke a standard neither delineated nor suggested in the statute empowering us to act.

Under his dissent, my brother Judge Weinfeld would, in effect, jettison the majority's case-by-case method of determination on standards expressed in the statute in favor of giving special treatment to SEC cases based largely, if not solely, upon the nature and motivation of the government agency. Perhaps this is desirable, but it is for Congress, not this court, to make that decision. There is no legislative history to suggest any such legislative decision. On the contrary, the fact that Congress limited exemptions of government actions to those for injunctive relief under the antitrust laws (§ 1407(g)) strongly implies that Congress intended to exclude other exceptions. *Expressio unius est exclusio alterius.* Rybolt v. Jarrett, 112 F.2d 642, 645 (4th Cir. 1940).

Concern that the public interest will be jeopardized by delays occasioned by the transfer of SEC actions with private actions seems to me to underestimate the power and capacity of transferee judges. Whatever beneficial public interest is served by giving priority to SEC discovery can be protected by the exercise of their broad powers. Indeed, a transferee judge is in a better position than are we to decide such questions. His asessment, based upon the operative realities at the trial court level, can best strike the proper balance between whatever priority may be justified by the public interest aspects of SEC civil actions, on the one hand, and, on the other, service to the salient objectives of § 1407.

EDWARD WEINFELD, Judge of the Panel (dissenting):

I dissent insofar as the SEC action is ordered included in the coordinated pretrial proceedings. The objective of that action is different from those of the private litigations. Basically, the SEC action seeks to protect the public interest by enjoining alleged continued violation of the securities acts.[1] As a matter of general policy, it is undesirable that SEC actions for injunctive relief, whose sole purpose is the expeditious safeguarding of the public interest, be subjected to the delays that are inherent in private litigations, with their different concerns, even where those private actions parallel the SEC complaints. In many cases, the Commission's use of its subpoena power has substantially developed the essential facts required to support its application to the courts for equitable relief; therefore, the need for further discovery is minimal and vastly different from those who allege private injury and seek money damages. To lump the SEC action with the private lawsuits would result in a slowdown in its effort to protect the public; it would defeat rather than "promote the just and efficient conduct" of the SEC litigation. With due deference to the majority, it is unrealistic to suggest that "there is no reason why the decision of the class action question or the discovery necessary in the private actions should unnecessarily delay the SEC in preparing for trial against the remaining defendants." Ofttimes the delay and postponement suit the purpose of the private litigant whose sole interest is a financial recovery. In this very case the record shows that the Commission has moved with expedition and dispatch,

---

[1]. *Cf.* SEC v. Ralston Purina Co., 346 U.S. 119, 124, 73 S.Ct. 981, 97 L.Ed. 1494 (1953); A. C. Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 40, 61 S.Ct. 414, 85 L.Ed. 500 (1941); Berko v. SEC, 316 F.2d 137, 141 (2d Cir, 1963).

whereas a leisurely pace has characterized most of the private lawsuits. Finally, for the Panel to adopt a general policy (which of course permits exceptions in unusual situations) which would recognize the role of the SEC in protecting the public interest in no respect would offend any Congressional purpose. The legislative history of § 1407(a) indicates that no consideration was given to exempting the SEC from its provisions. In that circumstance, there is no basis for a claim that "It would be violative of the basic statutory purpose for us now to read such an exception into the statute." The courts have frequently, in the exercise of their equity powers, and in the public interest, adopted policies adequate to the occasion.

Entirely apart from general policy considerations, an additional reason for nonconsolidation is that since the argument of the motion before this Panel an injunction has been entered against National Student Marketing upon its consent and the SEC case is in posture to go forward for an early trial, which is not the case in the instance of the private lawsuits. *Cf.* In re Grain Shipments, 300 F.Supp. 1402, 1405 (Jud.Pan. Mult.Lit.1969); In re Protection Devices and Equipment and Central Station Protection Service Antitrust Cases, 295 F.Supp. 39 (Jud.Pan.Mult.Lit.1968). The result reached in the present case is inconsistent with that reached in the King Resources litigation, where the Panel declined to consolidate a related action brought by the SEC because of its "advanced stage of preparation." In re King Resources Company Securities Litigation, 342 F.Supp. 1179, 1183, n. 13.